RONEN HALPERN,               )
                            )
              Plaintiff,    )
                            )
       v.                   )        1:09CV00474
                            )
WAKE FOREST UNIVERSITY HEALTH )
SCIENCES,                    )
                            )
              Defendant.    )

<u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Plaintiff's Motion to Amend the Complaint (Docket Entry 31), Defendant's Motion for Leave to File Surreply in Opposition to Plaintiff's Motion to Amend Complaint (Docket Entry 48), and Plaintiff's Motion to File a Last Word Reply to Defendant's Surreply in Opposition to Plaintiff's Motion to Amend Complaint (Docket Entry 52). For the reasons that follow, the Court will grant Defendant's motion and deny Plaintiff's motions.

<u>BACKGROUND</u>

Plaintiff instituted this action by filing a 31-paragraph Complaint on July 1, 2009. (Docket Entry 1.) According to the Complaint:

> Plaintiff Ron Halpern [is] a former medical student at the Wake Forest University School of Medicine, alleging that he was terminated only months before completing his final year and receiving his M.D. degree because of Defendants [sic] failure to make reasonable accommodations required by the American's [sic] with Disabilities Act for Plaintiffs [sic] diagnosed

disability of Attention Deficit Hyperactivity Disorder ("ADHD") and Anxiety Disorder Not Otherwise Specified.

(Id. at 1.) It alleges that "[t]his action is brought under Title II of the Americans with Disabilities Act, 42 U.S.C.S. § 12132, as well as § 504 of the Rehabilitation Act of 1973, 29 U.S.C.S. § 794(a)." (Id. at 2.) "Count I" sets out Plaintiff's Rehabilitation Act claim. (Id. at 5-6.) "Count II," with the heading "Title II of the Americans with Disabilities Act, 42 U.S.C.S. § 12132," alleges that Defendant "discriminated against Plaintiff solely on the basis of Plaintiff's disabilities in violation of 42 U.S.C. §12101, and the Federal regulations promulgated pursuant to the Act at 28 C.F.R. Part 35 et seq." (Id. at 6.)

On August 11, 2009, Plaintiff filed an Amended Complaint (to properly name Defendant). (Docket Entry 6.) Defendant answered. (Docket Entry 8.) On September 25, 2009, this Court, per United States Magistrate Judge P. Trevor Sharp, entered a Scheduling Order (Docket Entry 11) that adopted the parties' Joint Rule 26(f) Report (Docket Entry 10). As a result, Plaintiff had "until October 30, 2009 . . . to amend pleadings. . . . After [which], the court will consider whether the granting of leave would delay trial." (Docket Entry 10 at 3-4.) The Scheduling Order also adopted the parties' agreement that "[t]he date for completion of all discovery (general and expert) is: March 31, 2010." (Id. at 2.)

On October 29, 2009, Plaintiff filed another Amended Complaint

-2-

(to add a jury demand).  (Docket Entry 13.)  Shortly before the close of discovery, the Clerk set the case for trial during the October 2010 Master Calender Term.  (Docket Entries 16, 17.)  On April 30, 2010, Defendant filed a Motion for Summary Judgment with supporting brief and affidavits with numerous attachments.  (Docket Entries 19-28.)  As grounds for summary judgment as to Count II, Defendant argued that Title II of the Americans with Disabilities Act ("the ADA") provides a cause of action only against a "public entity" and that Defendant does not qualify as such.  (Docket Entry 28 at 20.)  On May 11, 2010, the Court granted Plaintiff's request for an extension of time until June 22, 2010, to respond to Defendant's summary judgment motion.  (Docket Entry 30.)

On May 20, 2010, Plaintiff filed his instant motion to amend.  (Docket Entry 31.)  In said motion, Plaintiff sought leave to add 32 new paragraphs to his Complaint in the form of three new "Counts" for "Breach of Contract," "Breach of the Covenant of Good Faith and Fair Dealing," and "Title III of the Americans with Disabilities Act," respectively.  (Id. at 1-5.)  At the end of said motion, Plaintiff appended the following statement:

> As grounds for said motion, Plaintiff shows unto the Court the following:
>
> a) the amendment is based on the identical facts as the existing Complaint, and therefore will not necessitate the reopening of discovery;
>
> b) this matter is not set for trial until October 4, 2010;

c) Defendant cannot be prejudiced by granting of the amendment;

d) Given that amendments may be made "during and [even] after trial," Rule 15(b), F.R.Civ.P, this motion is timely.

(Id. at 6 (emphasis added).)

In its response in opposition, Defendant argued, among other things, that Plaintiff had failed to demonstrate "good cause" under Rule 16(b) of the Federal Rules of Civil Procedure to deviate from the Scheduling Order's deadline for amendment of his pleadings. (Id. at 5-9.) Defendant further contended that Plaintiff "should not be permitted to offer [a purported showing of good cause] for the first time in reply, when [Defendant] would have no opportunity for rebuttal under the procedural rules." (Id. at 9 n.5.) Plaintiff thereafter filed a reply with two supporting affidavits (Docket Entries 33-35). In those filings, Plaintiff asserted, based on his counsel's sworn statement, that the Court should find "good cause" under Rule 16(b). (Docket Entry 33 at 2-5.)

As a result, Defendant sought leave to file a sur-reply to address Plaintiff's belated assertions regarding "good cause," attached a copy of its proposed sur-reply to its motion, and filed a supporting brief. (Docket Entries 48, 49.) Plaintiff then filed a response raising no objection to the Court's consideration of Defendant's sur-reply. (Docket Entry 51.) Plaintiff, however, moved for leave to file a "Last Word Reply" to Defendant's sur-reply. (Docket Entry 52.) As grounds for that request, Plaintiff

-4-

asserted that "he deserves (as the movant would on any motion) the opportunity to have the last word on this matter." (Id. at 1.)

DISCUSSION

As noted above, the Scheduling Order in this case (to which Plaintiff agreed) set October 30, 2009, as the deadline for Plaintiff to amend his pleadings.[1] Plaintiff filed his instant motion seeking leave to amend his Complaint on May 20, 2010, nearly seven months after the applicable deadline and nearly two months after the close of discovery. For more than two decades, judges of this Court have held that:

> A party who requests leave to amend after the date specified in the initial scheduling order must satisfy two prerequisites. The party must first demonstrate that there is some "good cause" why the court should not adhere to the dates specified in the scheduling order. If the party shows "good cause" to the court's satisfaction, the party must then demonstrate that leave to amend is proper under Federal Rule of Civil Procedure 15.

Forstmann v. Culp, 114 F.R.D. 83, 85 (M.D.N.C. 1987) (Gordon, J.) (citing Fed. R. Civ. P. 16(b)). Accord Interstate Narrow Fabrics, Inc. v. Century USA, Inc., 218 F.R.D. 455, 459-60 (M.D.N.C. 2003) (Tilley, C.J.). The United States Court of Appeals for the Fourth

---

[1] The Federal Rules of Civil Procedure ("the Rules") require the issuance of a scheduling order during the early phase of a case. See Fed. R. Civ. P. 16(b)(2). This requirement came into the Rules as part of "[t]he Supreme Court['s] extensive[] amend[ment] [of] [Rule] 16 in 1983." Forstmann v. Culp, 114 F.R.D. 83, 85 (M.D.N.C. 1987). "The drafters of the Rules intended this [scheduling] order to control the subsequent course of action so as to improve the quality of justice rendered in the federal courts by sharpening the preparation and presentation of cases, tending to eliminate trial surprise, and improving, as well as facilitating, the settlement process." Id. at 84-85 (internal quotation marks omitted). "The scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A) (emphasis added).

-5-

Circuit recently endorsed this view. See Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298-99 (4th Cir. 2008).

Notwithstanding the foregoing authority, when Plaintiff filed his instant motion seeking leave to amend his Complaint, Plaintiff neither addressed Rule 16(b)'s "good cause" requirement, nor presented arguments that could be construed as assertions of such.[2] Moreover, one of Plaintiff's few contentions in support of his request, i.e., that "the amendment is based on the identical facts as the existing Complaint" (Docket Entry 31 at 6), represents a virtual carbon-copy of a position that this Court (per Judge Gordon) has treated as establishing the absence of "good cause" within the meaning of Rule 16(b):

> [P]laintiff has not advanced any reason why the causes of action presented in the proposed amended complaint could not have been brought in a timely fashion. Indeed, plaintiff admits that these proposed causes of action are "based on exactly the same facts as the prior complaint." The court thus denies plaintiff's motion to amend and supplemental motion to amend as untimely under the pretrial scheduling order.

Forstmann, 114 F.R.D. at 86 (emphasis added). Under these circumstances, Plaintiff's instant motion to amend is due to be denied without further analysis. Nor would the Court reach a different result if Plaintiff had timely presented the arguments and supporting affidavit he belatedly included in his reply.

_____

[2] Under this Court's Local Rules, a motion "to amend the pleadings . . . while not required to be accompanied by a brief, must state good cause therefor and cite any applicable rule, statute, or other authority justifying the relief sought." M.D.N.C. R. 7.3(j). See also Fed. R. Civ. P. 6(c)(2) ("Any affidavit supporting a motion must be served with the motion.").

-6-

In that filing, Plaintiff first asserts that "no amount of research or due diligence would have suggested to any competent attorney that Plaintiff's dismissal from medical school for alleged 'unprofessional conduct' gave rise to a claim for breach of contract [or breach of the implied covenant of good faith and fair dealing]." (Docket Entry 33 at 2-3.) More specifically, according to Plaintiff's counsel, his pre-filing research "revealed that breach of contract cases involving disgruntled students generally fail . . . [and] it was for that reason that Plaintiff's counsel rejected any breach of contract claim in the instant case at the time the Complaint was filed." (Id. at 3 (citing Long v. University of N.C. at Wilmington, 120 N.C. App. 267 (1995), and "cases cited therein").)

The case identified by Plaintiff involved a "pre-nursing student" at a university who "sought admission into [said university's] School of Nursing - Bachelor of Science Degree Program." Long, 120 N.C. App. at 268. The university's handbook set out certain minimum requirements for admission to that program (which the pre-nursing student satisfied), but also noted that such admission required a "recommendation of the Committee for Student Affairs of the School of Nursing [and] approval of the nursing faculty [as well as] meeting admission criteria." Id. Because "there were 77 qualified applicants for the maximum of 60 positions available in the [program in question] whose cumulative grade point

-7-

averages were higher than [the pre-nursing student's] . . ., [the pre-nursing student] was not recommended by the Committee for admission to the [program]." Id. at 269 (internal parentheticals and quotation marks omitted). The North Carolina Court of Appeals "[a]ssum[ed] that the relationship between a student and a university can be contractual in nature, [but ruled that] the evidence in th[e] case d[id] not support a finding that there was a contract between the parties that insured the [pre-nursing student]'s admission into the School upon successful completion of the minimum requirements." Id. at 269-70 (internal citations omitted). In making this ruling, the Long Court cited three cases involving contract-based claims by students against universities: Elliott v. Duke Univ., 66 N.C. App. 590, 595-96 (1984); Lyons v. Salve Regina Coll., 565 F.2d 200, 202 (1st Cir. 1977); and Doherty v. Southern Coll. of Optometry, 862 F.2d 570, 577 (6th Cir. 1988). See Long, 120 N.C. App. at 270.

In the first cited case, the plaintiff initially enrolled in Duke's Divinity School under "special student status" (a category of students who "receive[d] full course credit only in the event that they subsequently enter[ed] into a recognized degree program at Duke University") and later sought to become a candidate for "the degree of Master of Religious Education." Elliott, 66 N.C. App. at 592-93. At the time of her initial enrollment as a special status student, the plaintiff "received a copy of the Divinity

-8-

School's official bulletin setting forth the requirements for becoming both a regular degree candidate and a special student." Id. at 593. The bulletin reflected that "[a]ll applicants for admission as regular degree candidates were required to submit an application to the Divinity School, and to have that application acted upon favorably by an Admissions Committee consisting of Divinity School faculty and students." Id.

According to the plaintiff, based on her conversations with the admissions director after her first year in "special student status," the plaintiff went through a second year at the Divinity School "attend[ing] her classes under the belief that she had made 'the transition' from special student status to regular degree status." Id. at 594. However, after that year, Plaintiff learned from "Divinity School officials that she was not considered a regular degree candidate and that she had not made a proper application to enter the [degree] program." Id. When the plaintiff thereafter "submitted a proper application to the University for admission as a regular degree candidate . . ., the Divinity School Admissions Committee denied [her] application for admission to degree status." Id. at 594-95.

The plaintiff argued that, because the admissions director "told her she was 'in transition' from special status to regular degree candidate status, selected core courses for her to take one semester, and never told her that there were procedures to follow

-9-

besides taking courses to switch from special to degree status [and because] . . . she performed her part of the agreement [by] pa[ying] tuition [and] t[aking] the prescribed courses, . . . [she] [wa]s entitled to specific performance of the alleged contract to admit her to the degree program." <u>Id.</u> at 595. The court rejected that position because: 1) "no matter what [she] understood or inferred from [the admission director's] statements, [the] plaintiff's own deposition testimony revealed that there was never a concrete agreement regarding admission between the parties with definite terms capable of enforcement," <u>id.</u>; and 2) the plaintiff "cannot establish that [the admissions director] had actual authority to admit her as a regular degree student, nor did he have apparent authority to do so upon which any reasonably prudent person could rely without further investigation," <u>id.</u> at 599.

In the second case cited in <u>Long</u>, the plaintiff, "while a student at [Salve Regina] College, received a grade of 'F' in a course captioned 'Nursing 402A.' Because of this grade, under the rules of the College, she could no longer continue her studies towards a degree in nursing, and, in fact, she graduated from the College with a degree in the field of psychology." <u>Lyons</u>, 565 F.2d at 201. The plaintiff filed suit seeking "an order requiring the College to change her grade in Nursing 402A from an 'F' to an 'Incomplete,' [which would allow her] reinstatement for the purpose of completing the courses required for a nursing degree . . . ."

-10-

Id. As the basis for her action, the plaintiff contended "that the College Manual and Academic Information booklet constituted a contract between plaintiff and the College, and that the booklet contained provisions for . . . [a grade appeals process that culminated with a] recommendation of a course of action to the Dean of the College by the [Grade Appeals] Committee." Id.

The district court agreed with the plaintiff "that the recommendation of the Committee [which voted 2-1 in favor of changing the grade from F to Incomplete] was binding upon the Dean and that the Dean's failure to follow the recommendation . . . constituted an actionable breach of contract by the College." Id. (emphasis added). The United States Court of Appeals for the First Circuit reversed because: "Nothing in the student manual suggests that a recommendation by the Committee could reasonably be thought to be anything more than an expression of the Committee's opinion as to the preferred course of conduct to be followed by the Dean in resolving the issue between the teacher and the student. Nothing in this document affords any basis for a reasonable expectation that it was mandatory upon the Dean to follow the Committee's views." Id. at 203 (emphasis added).

In the third and final case cited in Long, the plaintiff was admitted to an optometry school "under [a school] catalog, which provided on the inside cover that[,] . . . '[i]nasmuch as changes may be necessary from time to time, this catalog should not be

-11-

construed as constituting a contract between the [school] and any person.'" <u>Doherty</u>, 862 F.2d at 572. The school "d[id] not retroactively apply additional requirements for students who ha[d] already completed the year to which the additional requirements pertain . . ., however, [the school did] require first and second year students to take a new course that affect[ted] the third or fourth year course requirements." <u>Id.</u> "During the plaintiff's first year . . ., the school began to require that students pass a pathology clinic proficiency requirement in order to qualify for an externship program required for fourth year students." <u>Id.</u> The plaintiff failed to meet the standards of this clinical requirement and, as a result, the school "refused to confer a degree upon [him] . . . ." <u>Id.</u> at 572-73.

The plaintiff sued on various grounds, including "breach of contract." <u>Id.</u> at 573. The jury returned a verdict in his favor on that claim and the school appealed. <u>Id.</u> The United States Court of Appeals for the Sixth Circuit reversed, but, in so doing, accepted that, under Tennessee law, "the student-university relationship is contractual in nature although courts [cannot engage in] rigid application of contract law in this area." <u>Id.</u> at 576-77. The Sixth Circuit found that the plaintiff could not recover for breach of contract because any contract between the plaintiff and the school "included [the school's] right to make reasonable and necessary changes to the curriculum . . . [such as]

-12-

by adding the clinical proficiency requirement" and because "no proof in the record existed that [the school] exercised bad faith in making curriculum changes." Id. at 576.

Plaintiff's proposed "Count III" setting out a "Breach of Contract" claim consists of a paragraph (number 32) incorporating all of the paragraphs of the original Complaint and 12 new paragraphs (numbered 33 through 44), in which Plaintiff alleges the following:

1) Defendant "offered Plaintiff a position as a medical student" and "entered into a Contract . . . with Plaintiff upon his agreement to matriculate . . . and payment of tuition . . . [pursuant to which Defendant] agreed to provide medical education to Plaintiff" (Docket Entry 31 at ¶¶ 33-35);

2) Defendant and Plaintiff both "intended to be bound by said Contract . . . [which] was oral and/or written" and both "provided consideration in the form of mutual promises . . . [consisting of] Defendant['s] offer[ing] Plaintiff a spot in the first year class at the medical school, and Plaintiff promis[ing] to attend . . . [and] provid[ing] tuition" (id. at ¶¶ 36-38);

3) "The Contract is a valid, enforceable agreement for services between Defendant . . . and Plaintiff . . . [pursuant to which Defendant] was obligated . . . to provide Plaintiff with medical school education, to culminate with Plaintiff being awarded a medical doctorate" (id. at ¶¶ 39-40);

-13-

4) "Plaintiff met or exceeded [Defendant]'s stated grading requirements for graduation . . . [and] performed all of the conditions, covenants and promises required to be performed in accordance with the terms and conditions of the Contract as evidenced by the recommendation made by Dean Brenda Latham-Sadler on Plaintiffs [sic] behalf to various medical residency programs" (id. at ¶¶ 41-42); and

5) Defendant "intentionally breached the contact [sic] with Plaintiff by dismissing Plaintiff from medical school and . . . refus[ing] to allow Plaintiff to complete his medical degree" and Plaintiff "has been damaged thereby" (id. at ¶¶ 43-44).

In sum, Plaintiff's proposed Count III alleges that: 1) Plaintiff and Defendant formed a contract by which he agreed to attend the medical school, to pay tuition, and to complete the degree requirements and by which Defendant agreed to provide Plaintiff with a medical education and to award him a medical degree upon his completion thereof; and 2) Plaintiff satisfied all of his obligations under said contract, but Defendant did not meet its contractual duties because it failed to provide the final months of his medical education and to award him a degree. Plaintiff's reply does not explain why Long, Elliott, Lyons, or Doherty caused him to omit this claim from the original Complaint (or to opt against adding it before the deadline for such amendments under the Scheduling Order). Nor does Plaintiff discuss

-14-

why he now believes the cited cases no longer pose an impediment to his proposed Count III. Finally, for the reasons that follow, it does not appear that these opinions reasonably should have influenced a decision about the viability of this proposed claim.

As an initial matter, because none of these four decisions comes from the North Carolina Supreme Court, none of them constitute controlling authority as to Plaintiff's claim. <u>See</u> <u>Liberty Mut. Ins. Co. v. Triangle Indus., Inc.</u>, 957 F.2d 1153, 1156 (4th Cir. 1992) ("[A] federal court sitting in diversity has a duty to apply the operative state law as would the highest court of the state in which the suit was brought. . . . The best evidence to this effect would be, of course, a decision by the highest court [of the state] which addresses the contract interpretation issues now before us, but that court has not spoken to many of these questions. In such circumstances, the state's intermediate appellate court decisions constitute the next best indicia of what state law is, although such decisions may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise." (internal quotation marks omitted)). In addition, as set forth above, all four of the decisions at issue either assumed or held that the relationship between a student and a university could qualify as contractual in nature. Moreover, although each decision rejected

-15-

the plaintiff's specific contractual claim, none did so in a manner that obviously conflicts with Plaintiff's allegations in Count III.

The Long Court found that the alleged contractual document set forth three criteria for admission to the nursing program, but that the plaintiff only satisfied one. See Long, 120 N.C. App. at 269-70. In contrast, there does not appear to be any question that Plaintiff was admitted into Defendant's program and Plaintiff alleges that he "had performed all of the conditions, covenants and promises required to be performed in accordance with the terms and conditions of the Contract." (Docket Entry 31 at ¶ 42.) In Elliott, the court held that there was no "concrete agreement regarding admission," Elliott, 66 N.C. App. at 595, and that the plaintiff lacked a basis to conclude that the university employee, upon whose alleged statements the plaintiff purported to rely, had authority to enter into an agreement regarding the plaintiff's admission into a degree program, see id. at 599. Conversely, in Plaintiff's case, there is no apparent dispute about whether he was admitted to the medical school by Defendant and its authorized agents. The plaintiff in Lyons lost because the appellate court rejected the district court's construction of the word "recommendation" in the cited contractual document, Lyons, 565 F.2d at 203, but Plaintiff's instant claim does not turn on the meaning of that term. Finally, the Doherty Court reversed the breach of contract judgment in the plaintiff's favor because it found that

-16-

the contractual document permitted the school to add the requirement that the plaintiff failed to satisfy. See Doherty, 862 F.2d at 576-77. The proposed Count III, however, does not allege that Defendant altered the requirements for Plaintiff's degree.

Under these circumstances, the Court concludes that Plaintiff's proffered reason for his delay in seeking leave to amend his Complaint to add his newly-proposed Count III does not establish "good cause" to excuse Plaintiff's failure to comply with the applicable deadline in the Scheduling Order. Plaintiff offers a slightly more detailed argument as to his proposed Count IV; however, for the reasons that follow, the Court again finds that Plaintiff has not shown "good cause" warranting relaxation of the Scheduling Order's time line for amendments of this sort.

In the proposed Count IV, Plaintiff incorporated all prior paragraphs of the original Complaint (as well as the proposed Count III) in one paragraph (number 45) and added five new paragraphs (numbers 46-50) to assert a claim for "Breach of the Covenant of Good Faith and Fair Dealing." (Docket Entry 31 at ¶¶ 45-50.) More specifically, Plaintiff alleges that:

1) "[i]n every contract governed by the law of the State of North Carolina, there is an implied covenant of good faith and fair dealing" (id. at ¶ 46);

2) Defendant "breached" that covenant (A) by failing to advise Plaintiff of the charges against him before the disciplinary

-17-

committee met, (B) by presenting "untrue, inaccurate and/or misconstrued" charges to the disciplinary committee, (C) by failing to provide the disciplinary committee and appeals committee "with summarized information regarding the positive aspects of Plaintiff's record," (D) by preventing Plaintiff from "bring[ing] legal representation to the Appeals Committee," (E) by failing to consider Plaintiff's conduct "in light of his disability," (F) because a medical school dean "implied that Plaintiff was not credible before the Appeals Committee because he wore a beard," (G) by "not allow[ing] [Plaintiff] to undergo counseling rather than suffering dismissal," (H) by "dismiss[ing] [Plaintiff] for being tardy in sending thank-you notes" despite "represent[ing] in his residency applications [that he was] 'in good standing,'" and (I) via "additional incidents not ennumerated here" (<u>id.</u> at ¶ 47); and

　　　3) Defendant's conduct "injured Plaintiff's right to receive the benefits of the Contract [between the parties]," causing "economic losses" that entitle him to damages (<u>id.</u> at ¶¶ 48-50).

　　　Again, Plaintiff does not explain how the substance of the rulings in <u>Long</u>, <u>Elliott</u>, <u>Lyons</u>, and <u>Doherty</u> affected the timing of his decision to present this claim. Further, as the foregoing discussion of those decisions reveals, only <u>Doherty</u> even remotely concerns the covenant of good faith and fair dealing (in that the Sixth Circuit rejected any breach of contract claim based on the changed curriculum requirements because it found no record evidence

-18-

that the school made the change in bad faith).  Moreover, given the

overwhelming factual differences between the facts in Doherty and

the facts alleged by Plaintiff, the only lesson from Doherty

Plaintiff's counsel reasonably could have found applicable to Count

IV would have been that a plaintiff cannot state a claim for breach

of an implied covenant of good faith and fair dealing unless a

basis exists to allege that the defendant acted in a manner

inconsistent with good faith and fair dealing.  That principle,

however, should have been obvious to any reasonable person without

reference to Doherty.  Accordingly, the Court finds that the legal

research identified by Plaintiff's counsel would not have provided

a reasonable basis for delaying pursuit of Count IV and thus an

excuse premised on such case law falls short of establishing "good

cause" to excuse violation of the Scheduling Order's deadline for

amendment of Plaintiff's Complaint.

As to Count IV, Plaintiff appears to offer the following

additional argument:

> [N]o leap of logic is necessary to understand that most,
> if not all, of the facts set forth in paragraph 47 of the
> proposed amended complaint in this case could only have
> been gleaned by Plaintiff from the discovery process
> since they were facts exclusively within the knowledge of
> the Defendant and previously unknown to Plaintiff or his
> counsel, e.g., "[the Disciplinary] and Appeals Committee
> were not provided with summarized information regarding
> the positive aspects of Plaintiff's record (subparagraph
> 47 c); [the Disciplinary Committee] was supplied with
> charges against Plaintiff which included incidents that
> were    untrue,    inaccurate    and/or    misconstrued."
> (Subparagraph 47 b).  Once these facts were "discovered"

and collectively summarized, the theory of a breach of "good faith and fair dealing" took form.

(Docket Entry 33 at 3.)

Plaintiff correctly observes in his reply that this Court (per then-Chief Judge Tilley) has recognized that "'[g]ood cause' under Rule 16(b) exists when evidence supporting the proposed amendment would not have been discovered 'in the exercise of reasonable diligence' until after the amendment deadline had passed." Interstate Narrow Fabrics, 218 F.R.D. at 460. As an initial matter, the Court's review of the allegations in paragraph 47 indicates that Plaintiff likely knew about most of these matters at the time they occurred (i.e., before October 30, 2009). Further, Plaintiff has not shown good cause under Rule 16(b), even if the Court accepts his premise that, at the time he filed the Complaint, Plaintiff did not know some of the facts underlying proposed Count IV (such as the two specific examples he cited in the language quoted above regarding the disciplinary committee's failure to consider information favorable to him and its consideration of inaccurate negative information), but rather only learned about those matters during discovery.

Specifically, Plaintiff has not carried his burden of demonstrating good cause because, as Defendant notes, Plaintiff "has failed to disclose when in the discovery process he received notice of the facts underlying his new claims." (Docket Entry 48-1

-20-

at 3.)[3]  Plaintiff has the burden of showing that the information in question did not come to his attention until after October 30, 2009; he cannot ask the Court to assume that the discovery that provided him with notice of the relevant facts came to him after that date.  Moreover, Defendant has presented the Court with a copy of materials it provided Plaintiff on October 22, 2009, including the minutes of the disciplinary committee hearing.  (Docket Entry 48-1 at 25-28.)  These materials afforded Plaintiff notice of what matters were and were not considered by the disciplinary committee.

Given that Plaintiff's counsel admittedly had considered pursuing a contract-based claim, that Plaintiff had personal knowledge of many of the matters he now characterizes as reflecting Defendant's failure to deal in good faith before the filing of the Complaint, and that (prior to October 30, 2009) Plaintiff's counsel received documentation regarding the information that the disciplinary committee considered and/or failed to consider,

---

[3] Defendant's argument in this regard appears in its proposed sur-reply, which (as noted in the Background section) Plaintiff does not object to the Court accepting.  The Court finds that Plaintiff's presentation of arguments related to "good cause" under Rule 16(b) for the first time in his reply regarding his motion to amend his complaint warrants consideration of Defendant's proposed sur-reply.  The Court, however, does not find any basis to allow Plaintiff to file a "Last Word Reply," as he has requested by motion.  In this regard, the Court first notes that, in contravention of the applicable Local Rules, Plaintiff failed to file a brief in support of said motion.  See M.D.N.C. R. 7.3(a) (requiring submission of brief in support of all motions not identified in Local Rule 7.3(j)); M.D.N.C. 7.3(j) (not identifying motions for leave to file additional memoranda as among motions exempted from Local Rule 7.3(a)).  "A motion unaccompanied by a required brief may, in the discretion of the court, be summarily denied."  M.D.N.C. R. 7.3(k).  Further, in the Court's view, to the extent a movant generally may have a right to make the final argument related to the merits of a motion, Plaintiff forfeited that right by failing to include any discussion of Rule 16(b) in his initial motion to amend (as this Court's Local Rule 7.3(j) required him to do).  Given the impending trial date, the Court will not delay resolution of these matters to await further argument from Plaintiff.

Plaintiff (at a minimum) should have sought an extension of the deadline for amending his Complaint while he investigated these matters through further discovery. Instead, Plaintiff waited until May 20, 2010, to act. At that point, the Scheduling Order's amendment deadline had passed more than six months earlier, discovery had been concluded for nearly two months, and summary judgment briefing was underway.[4]

Under these circumstances, the Court does not find that Plaintiff acted with sufficient diligence in seeking to bring proposed Count IV to establish "good cause" as required by Rule 16(b). See George v. Duke Energy Retirement Cash Balance Plan, 560 F. Supp. 2d 444, 480 (D.S.C. 2008) ("'Good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."); Marcum v. Zimmer, 163 F.R.D. 250, 255 (S.D.W. Va. 1995) ("[T]he touchstone of 'good cause' under Rule 16(b) is diligence."); Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

The Court similarly finds a lack of good cause to permit Plaintiff to add proposed Count V. Plaintiff admits that this proposal effectively represents an effort "to change the ADA claim

---

[4] Moreover, according to Defendant, Plaintiff took his last deposition of Defendant's employees on December 11, 2009, more than five months before he sought to add this claim. (See Docket Entry 48-1 at 3.)

-22-

Case 1:09-cv-00474-NCT-LPA   Document 53   Filed 07/01/10   Page 22 of 29

[in Count II of the Complaint] from Title II to Title III" in light of Defendant's summary judgment argument that Plaintiff cannot proceed against Defendant under Title II of the ADA. (Docket Entry 33 at 4.) According to Plaintiff, by seeking the addition of an alternative ADA cause of action "[w]ithin a matter of weeks" after receiving the summary judgment motion, he made a "prompt response under these circumstances [that] constitutes 'good cause.'" (Id.) The Court disagrees and instead adheres to the view previously expressed by then-Chief Judge Tilley that "[u]nfamiliarity with controlling law does not rise to the level of 'good cause.'" Interstate Narrow Fabrics, 218 F.R.D. at 460 (ruling that counsel's misapprehension of statute of limitations did not warrant untimely amendment of pleading). See also Marcum, 163 F.R.D. at 254 ("'[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.'" (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992)) (ellipses and emphasis omitted)); 3 James Wm. Moore et al., Moore's Fed. Prac. - Civil § 16.14[b] (3d. 2009) (same).

Plaintiff cites Wall v. Fruehauf Trailer Servs., Inc., 123 Fed. Appx. 572, 576-77 (4th Cir. 2005), in support of his contrary view. The Court does not believe that Wall compels it to conclude that Plaintiff satisfied Rule 16's "good cause" requirement as to proposed Count V. As an initial matter, the Wall Court simply affirmed a district court's decision to grant leave to amend in the

case before it; it did not rule that all district courts must grant leave whenever a party seeks to amend outside the period provided by the Scheduling Order based on the party's realization that an existing claim suffers from a legal defect.  Further, Wall is an unpublished decision and thus not controlling precedent.  Although the undersigned United States Magistrate Judge generally finds unpublished Fourth Circuit decisions highly persuasive, several factors counsel against such an approach in this case.

First, the Wall Court appeared to read Rule 16(b)'s "good cause" standard in a manner designed to bring said provision into line with what the court identified as the "liberal standard" of Federal Rule of Civil Procedure 15(a).  See id.  More recently, the Fourth Circuit, in a published opinion, expressly rejected such an approach.  See Nourison Rug, 535 F.3d at 298-99 ("There is a tension within the Federal Rules of Civil Procedure between Rule 15(a) and Rule 16(b) amply illustrated by this appeal.  Rule 15(a) provides that leave to amend 'shall be freely given when justice so requires.' . . .  On the other hand, Rule 16(b) provides that a schedule shall not be modified except upon a showing of good cause . . . .  Given their heavy case loads, district courts require the effective case management tools provided by Rule 16. . . .  [The defendant] urges us to adopt a new standard, reading Rule 16(b) in light of Rule 15(a)'s liberal allowances.  We refuse to do so.").

Second, the <u>Wall</u> Court achieved its "harmonization" of Rules 15(a) and 16(b) by drawing on a decision, <u>Barwick v. Celotex Corp.</u>, 736 F.2d 946 (4th Cir. 1984), that addressed the force of a scheduling order entered prior to the adoption of Rule 16(b)'s "good cause" standard. <u>See</u> <u>Wall</u>, 123 Fed. Appx. at 576 ("This Court has noted that scheduling orders 'are not set in stone, but may be relaxed for good cause, extraordinary circumstances, or in the interests of justice.'" (quoting <u>Barwick</u>, 736 F.2d at 954)). The mandatory scheduling order and related "good cause" test for scheduling modifications became a part of Rule 16 in 1983. <u>See</u> <u>Forstmann</u>, 114 F.R.D. at 85. Courts previously had experimented with the use of scheduling orders. <u>See</u> Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b). The <u>Barwick</u> Court affirmed a district court's enforcement of a scheduling order entered prior to the 1983 Amendment to Rule 16, but in so doing not only emphasized that "the terms of the order must be firmly and fairly enforced by the district judge if it is to serve the purpose of pretrial management," but also used the language (repeated in <u>Wall</u>) indicating that grounds other than good cause could support alteration of scheduling order deadlines. <u>See</u> <u>Barwick</u>, 736 F.2d at 954.

The existing Rule 16(b) expressly limits modification of scheduling orders to "good cause" and thus does not permit alteration of deadlines based upon a showing of "extraordinary

-25-

circumstances" or "in the interest of justice," as <u>Barwick</u> did in connection with scheduling orders entered prior to the 1983 Amendment. It does not appear that the Fourth Circuit has repeated the relevant <u>Barwick</u> language in a published opinion construing a scheduling order adopted pursuant to the post-1983 Amendment version of Rule 16 (as it did in the unpublished <u>Wall</u> decision). The Court thus concludes that, to the extent the <u>Barwick</u> standard authorized courts to relax scheduling order deadlines on grounds other than "good cause," it did not survive the 1983 Amendment to Rule 16. The Fourth Circuit's recent published statement regarding Rule 16(b) supports this conclusion. <u>See</u> <u>Nourison Rug</u>, 535 F.3d at 298 ("[A]fter the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings.").

Finally, the <u>Wall</u> Court suggested that a showing of an absence of prejudice to one's opponent constituted a showing of good cause, but did not explain this perspective. In the absence of such an explanation, the Court chooses to follow the view (taken by other judges of this Court and endorsed by a respected commentator) that lack of prejudice to one's opponent does not establish good cause. <u>See</u> <u>Cole v. Principi</u>, No. 1:02CV790, 2004 WL 878259, at *7 (M.D.N.C. Apr. 22, 2004) (Beaty, J.) (unpublished)[5]; <u>Dewitt v. Hutchins</u>, 309 F. Supp. 2d 743, 748 (M.D.N.C. 2004) (Dixon, M.J.);

---

[5] Although the Westlaw version of this opinion bears a date of April 4, 2004, the Court's own records document the date of decision as April 22, 2004.

Moore, _supra_, § 16.14[b].  Authority from other courts in this Circuit and the commentary to Rule 16(b) that emphasizes the fact that the "good cause" inquiry focuses on the diligence of the movant seeking to alter a scheduling order further supports the position that alleged lack of prejudice to the movant's opponent has no bearing on the "good cause" issue.  _See_ _George_, 560 F. Supp. 2d at 480 ("'Good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."); _Marcum_, 163 F.R.D. at 255 ("[T]he touchstone of 'good cause' under Rule 16(b) is diligence."); Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

CONCLUSION

As Judge Gordon observed nearly a quarter of a century ago: "the scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."  _Forstmann_, 114 F.R.D. at 85 (internal quotation marks omitted).  Rather, "a scheduling order is the critical path chosen by the [court] and the parties to fulfill the mandate of Rule 1 in securing the just, speedy, and inexpensive determination of every action."  _Marcum_, 163 F.R.D. at 253 (internal brackets and quotation marks omitted).  As a result, the judges of this Court consistently enforce case management deadlines to ensure that

trials take place as scheduled. See Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc., No. 1:03CV537, 2005 WL 6043267, at *3 (M.D.N.C. July 7, 2005) (unpublished) (noting that "court's scheduling practice has proven to be effective for the management of individual cases and for overall docket control"). Defendant persuasively has demonstrated (see Docket Entry 32 at 11-13) and Plaintiff grudgingly has conceded (see Docket Entry 33 at 6) that the granting of Plaintiff's proposed amendment of his Complaint would require the re-opening of discovery. Such action (even if brief) would make it virtually impossible for this case to proceed to trial as scheduled during the October 2010 Master Calendar setting (particularly given the likelihood of further dispositive motion practice). For the reasons set forth above, Plaintiff has failed to demonstrate "good cause" within the meaning of Rule 16(b) to justify such a result.

IT IS THEREFORE ORDERED that Defendant's Motion for Leave to File Surreply in Opposition to Plaintiff's Motion to Amend Complaint (Docket Entry 48) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion to File a Last Word Reply to Defendant's Surreply in Opposition to Plaintiff's Motion to Amend Complaint (Docket Entry 52) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend the Complaint (Docket Entry 31) is **DENIED**.[6]

                                              /s/ L. Patrick Auld
                                         **L. Patrick Auld**
                                    **United States Magistrate Judge**
July 1, 2010

---

[6] For reasons stated in <u>Deberry v. Davis</u>, No. 1:08CV582, 2010 WL 1610430, at *7 n.8 (M.D.N.C. Apr. 19, 2010) (unpublished), the undersigned Magistrate Judge has entered an order, rather than a recommendation as to Plaintiff's Motion to Amend the Complaint.